García, Demandante y Apelado, *v.* La Asamblea Municipal de Cayey, Demandada y Apelante.

Apelación procedente de la Corte de Distrito de Guayama en procedimiento de *certiorari.*

No. 2561.—Resuelto en mayo 12, 1922.

Ordenanza Municipal Válida — Trabajo Involuntario — Arbitrio Sobre Entrada a Espectáculos Públicos.—No envuelve la imposición del *trabajo involuntario* a que se refiere la Enmienda Trece de la Constitución una ordenanza municipal que exige a todo empresario de espectáculos públicos el adquirir estampillas emitidas por el municipio para cobro de un arbitrio obligándole a fijarlas a los billetes de entrada, so pena de incurrir en multa o prisión. La infracción consistiría, no en dejar de cumplir un servicio, sino en vender un billete sin la estampilla.

Id.—Ordenanza Municipal Razonable—Impuesto de Lujo.—Una ordenanza municipal imponiendo el pago de un arbitrio a toda persona que asista a un espectáculo público, no es una contribución sobre la persona, y, como impuesto de lujo, no es irrazonable.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. M. Marcos Morales.*

Abogado del apelado: *Sr. B. Fernández García.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

La Asamblea Municipal de Cayey aprobó una ordenanza que imponía una contribución a la venta de billetes de entrada a teatros, semejante a la ordenanza aprobada por el Municipio de Mayagüez en el caso de *The Mayagüez Show Company* v. *El Municipio de Mayagüez,* de abril 28, 1922, (pág. 451). Algunas de las cuestiones promovidas en el pre-

sente caso fueron resueltas en aquella apelación y otros casos de asambleas municipales decididos entonces. En este caso la corte inferior anuló la ordenanza.

Nos inclinamos a convenir con la apelante en que si la corte dió por ciertos los hechos alegados en la demanda sin que se presentara prueba y la contestación negaba dichos hechos, la corte incurrió en error. Sin embargo, toda vez que la sentencia ha de revocarse por otros fundamentos no haremos un examen minucioso de los autos para ver si tiene razón la apelante.

Asimismo en cuanto a si el *certiorari* era el auto adecuado, creemos que la apelante no tiene razón al sostener lo contrario, pero como entendemos que no procedía el *certiorari* a virtud de los hechos alegados no consideraremos la cuestión con gran extensión.

Semejantes consideraciones son de aplicación sobre si el procedimiento se siguió contra las verdaderas personas. Parece que cuando se trata de anular una ordenanza la municipalidad misma es parte nceesaria.

La principal cuestión que ha de discutirse en este caso es si esta ordenanza es nula y anticonstitucional por imponer un trabajo involuntario a los dueños de teatros u otros espectáculos públicos obligándoles a cobrar una contribución bajo pena de multa o prisión si dejasen de hacerlo. Para concretar, la ordenanza exige al dueño de un teatro comprar estampillas y hacer que se fijen a los billetes de entrada que se vendan a las personas que asistan al teatro, so pena de incurrir en pago de multa o prisión.

Prescribe además dicha ordenanza que estas estampillas serán vendidas simultáneamente por el dueño del teatro con cada uno de los billetes de entrada.

Hay sin embargo, también una sección en la ordenanza que prohibe a todo empresario o a cualquiera de sus encargados tomar dinero, o permitir la entrada al teatro sin haberse pagado el impuesto correspondiente.

Ahora bien, dudamos si puede castigarse a una persona por dejar de proveerse de estampillas o de comprar dichas estampillas antes de efectuar la venta de los billetes de entrada. Pero la impugnación no se hace por estas razones y pueden considerarse como supérfluas estas prescripciones de la ordenanza. Lo que la ordenanza requiere es que no se vendan billetes a menos que se pague la estampilla. Este es un medio corriente con más o menos formalidades de cobrar un arbitrio en sello. La infracción de la ordenanza consistiría, no en dejar de cumplir un servicio sino en vender un billete sin la estampilla. Esta parece ser suficiente contestación a la alegada servidumbre involuntaria. Pero también examinaremos hasta cierto límite lo que significa una servidumbre involuntaria. Hacemos la siguiente cita de 12 Corpus Jury, página 937, párrafo 446, a saber:

"La Enmienda Trece a la Constitución de los Estados Unidos prescribe que 'ni la esclavitud, ni la servidumbre involuntaria, menos como castigo por un delito del cual la persona ha sido debidamente declarada culpable, existirá en los Estados Unidos, ni en ningún lugar sujeto a su jurisdicción.' El fin principal de esta enmienda fué llevar a cabo la abolición de la esclavitud africana en los Estados Unidos. Pero la adición de las palabras 'trabajo involuntario' a la prohibición de la enmienda dió a ésta mayor alcance y ha sido aplicada a cualquier servidumbre que en realidad es involuntaria, bajo cualquier forma con que tal servidumbre haya sido disfrazada. De conformidad con esto se ha resuelto que es aplicable a las costumbres de esclavos que prevalecían entre las tribus incivilizadas de Alaska; a la servidumbre involuntaria a pretexto de aprendizaje; y para anular todos los estatutos o contratos que prescribían un estado de peonaje, como el que existió en China, en Méjico y partes de los Estados Unidos adquiridas de Méjico, y más recientemente bajo los estatutos de varios Estados de la Unión. El precepto constitucional no anula un estatuto que prescribe como delito el obtener dinero, propiedad o empleo por virtud de un contrato para realizar trabajo o servicios, con la intención entonces de perjudicar o defraudar al principal. Pero si el estatuto va más lejos y hace que el mero incumplimiento del contrato por no realizar el servicio es prueba *prima facie* de la intención de defraudar, es nulo. Y en general tales es-

tatutos son nulos dondequiera que el delito en ellos prescrito se comete simplemente mediante el incumplimiento de un contrato, o por no pagarse una deuda. La garantía constitucional contra el trabajo involuntario, sin embargo, no impide que se decrete una ley que exija la realización de trabajo en el servicio público, como al trabajar en los caminos públicos o de otro modo o en vez de las contribuciones; o por concederse derechos exclusivos para llevar a cabo cierta clase de negocios cuando son necesarios o adecuados para realizar un fin que tiene por objeto el bien público. Ni invalida tampoco un estatuto que prescribe un castigo de prisión por desacato a la corte, menos cuando el estatuto prescribe prisión con trabajo forzado. Ni invalida una estipulación en una escritura de venta por la cual se compromete el comprador, sus herederos y cesionarios, a pagar a perpetuidad una renta anual.

"El servicio de marinos se considera como excepcional, y de acuerdo con esto los marinos que voluntariamente han celebrado un contrato por un período de servicio se ha resuelto que han renunciado por tal período a su libertad personal, de modo que ni el contrato mismo ni un estatuto que lo autorice constituye una violación de la garantía contra el trabajo involuntario. Existe tal violación, sin embargo, cuando a marinos que no han celebrado un contrato voluntario se les obliga a trabajar en barcos americanos."

La infracción de una ordenanza municipal constitucional es un delito, y el castigo impuesto una excepción específica al trabajo involuntario, de modo pues que la única cuestión es la de si las obligaciones impuestas por esta ordenanza constituye un trabajo involuntario. Como se indica en el caso de *Robinson* v. *Baldwin,* 165 U. S. 275, el trabajo involuntario no es aplicable a un servicio acostumbrado como el que se impone a los marineros, y los servicios que han sido considerados como excepcionales desde tiempo inmemorial no se considerarán como comprendidos en el espíritu de la enmienda. Otros casos muestran más particularmente que la servidumbre debe ser de la persona. En otras palabras, en general, que una persona queda sujeta a la voluntad directa de un amo. Hay otros casos que tal vez caen dentro del espíritu de la enmienda pero no encontramos ninguno en que se diga que el requisito de un simple servicio o servicios semejantes

a los envueltos en este caso habrán de considerarse como trabajo involuntario.   Esta consideración sería de aplicación aun a la obligación que pretende imponerse, o sea el tener a mano una provisión de estampillas.

Además, dudamos si en realidad podrían considerarse estos servicios como involuntarios.   Si el dueño del teatro no se resuelve a ayudar al gobierno a cobrar esta forma de ingreso y se niega a estar al tanto de que se acompañe una estampilla a cada billete que se expenda puede abandonar su negocio. Convenimos con la corte inferior en que ésta sería una elección muy desagradable, pero este es un medio claro de eludir la servidumbre.   Por lo menos este razonamiento es aplicable a la prohibición de vender un billete sin la estampilla.   Como se dijo hace mucho tiempo en el caso de *McCulloh* v. *Maryland.* 4 Wheaton, 316, la facultad de fijar el impuesto comprende la de anular, pero las simples obligaciones impuestas al dueño de un teatro con esta clase de arbitrio no podían considerarse tan onerosas que envolvieran aún la posibilidad de que debía abandonar su negocio.

Esta prohibición o reglamentación para vender un billete sin la estampilla es la esencia de la ordenanza y está dentro de las facultades de reglamentación u otras de la municipalidad.   La imposición de esta contribución envuelve el ejercicio de la misma facultad dominante al exigirse una licencia antes de empezar un negocio.   Es un ejercicio de poder tal vez de distinta clase, pero es un ejercicio semejante de soberanía.

También sostuvo el apelado que la ordenanza era irrazonable pero la prueba de esto (*test*) fué al parecer, que dicha ordenanza imponía contribuciones a los ciudadanos en particular al exigirles pagar esta clase de impuesto de estampilla. Como indicamos en el caso de *Mayagüez Show Co.* v. *Municipio de Mayagüez,* (pág. 451), el uso de estampillas como estas es una forma corriente de imposición de contribución y fué el

método observado en parte en las Leyes Federales sobre Ingresos durante la guerra. A falta de una clara autoridad en sentido contrario, nos sentimos obligados a declarar que este impuesto de lujo como otra contribución semejante de rentas internas no es irrazonable por su modo de imposición.

Aún cuando se impone a las personas a quienes se les exige pagar un derecho de estampilla este arbitrio no es un impuesto sobre la persona como sostiene el apelado. Es una contribución por el uso o compra de un billete de entrada, y no se impone directamente al individuo, ni requiere ningún servicio de él, pues no está obligado a comprar dicho billete.

Dijo también el apelado que la cláusula penal de la ordenanza era nula. Tal vez no podía imponerse penalidad por no tenerse a mano las estampillas necesarias, pero nos inclinamos al parecer de que podría multarse a un dueño de teatro por haber vendido un billete de entrada sin pagarse el derecho de estampilla. La Ley Municipal, artículo 58 A, autoriza la imposición de una multa por la infracción de las ordenanzas municipales y esta clase de contribución parece estar comprendida dentro del poder de reglamentación conferido a la municipalidad. Véase por analogía, el caso de *El Pueblo* v. *Garzot*, 24 D. P. R. 231, donde se resolvió que un municipio tenía derecho a imponer un arbitrio por espectáculos en particular. De todos modos la cuestión de la penalidad no fué considerada por la corte inferior. Este es un *certiorari* para probar la validez de la ordenanza y no una causa por infracción de una ordenanza. Cualesquiera dudas que tengamos debemos reservarlas para un caso adecuado después del debido informe.

Otras cuestiones sobre la naturaleza de la contribución y la manera de aprobar la ordenanza que fueron promovidas en la corte inferior pero que no se resolvieron, han sido discutidas por nosotros en el caso de *Sucesores de C. y J. Fantauzzi* v. *La Asamblea Municipal de Arroyo,* (pág. 423) y en los demás casos municipales decididos en ese día.

Debe revocarse la sentencia apelada y desestimarse la demanda.

> *Revocada la sentencia apelada y desestimada*
> *la demanda.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Franco Soto no intervino en la vista de este caso.